Okay, the last case I think on our docket is People v. Lincoln Scott King Counsel? You don't have to sit down, come on up I represent the defendant Nathan King. He was convicted of aggravated predatory criminal sexual assault, Class X, in October of 2018 in Williams County. He was represented by Attorney Susan Berger. And that's why I want to take a moment to kind of preoccupy you for a moment. My apologies, Your Honor. I want to state the court is not in the habit of throwing other attorneys under the bus or speaking ill of them. And I don't intend to necessarily today. Ms. Berger has a fairly serious illness. Otherwise, I would suspect it would be her standing before you today making this argument rather than myself. But I want the court to be aware that that's not something I'm accustomed to. And I hate to say it, I don't feel comfortable doing it. But in this case, Mr. King will speak. On behalf of the court, I think we can all appreciate that. Yes. She's a friend of ours as long as can be. And it's actually her request that I'm here. So Mr. King was convicted of a set of aggravated predatory criminal sexual assault. Briefly, the facts are that Mr. King had a daughter, approximately six years old, named Madison. Madison was friends with the girl named Riley, lived across the street, directly across the street from him in Carville, Illinois. At the children's request, they had a sleepover. Riley came over to Mr. King's house, pajamas ready to stay the night. He made a pallet on the floor for them. They watched TV, goofed around, played on YouTube till the evening hours, maybe about 11 or so. And then he put him to bed. Riley, the victim in this case, could not go to sleep and became agitated. These are facts everyone has pretty much agreed to during the course of the trial. Mr. King then text the parents and advised that you've got a sad little girl over here. He received a text back that they were on their way to get him or to get Riley. Mr. Riley testified that he started going across the street to get his daughter. Mr. King got the child up and got her ready and her belongings to go back home. It was at that point that Riley states that Mr. King pulled her pajamas down, licked her front butt, what she later described as vaginal area, once. She pulled her pajamas up. Mr. King then took her to the front door where he previously turned the porch light on to await Mr. Riley's arrival. Mr. Riley arrived and he took his daughter back home. Nothing was said that evening. Child went to bed, went to sleep. The next day, the child awakens, comes in to eat breakfast, licks her father on the neck. The father says, why did you do that? And she stated Mr. King did that to her. The child was questioned by the parents. What she meant, and that's when she described that he licked her front butt area. She had a forensic or she had an exam by doctors at the parent ER. She was forensically examined. Later on, what it showed was that there was DNA on Riley's vaginal area, though it was not select. It could have been contact DNA. She could have picked it up from anywhere. As the evidence from Miss Berger's expert testified, it was essentially the least amount of DNA that you can obtain. Let me, I mean, you have a very limited amount of time and I want to ask about some of the issues of ineffective assistance of counsel because we all know the facts, I think. And I'm sure if any of my colleagues need to ask further about it, they will. But, you know, one of the issues raised on the ineffective assistance of counsel relates to the Child Advocacy Center interviews. And it's very difficult for us to look at that because there's no transcript in the record. And the, at least from what I could see, the interview, the actual DVD or whatever is not in the record. Are you aware of these matters being in the record at all? They're not in the record, and that's the point of my first argument on the ineffective assistance, Your Honor. Well, it looks like counsel for the defendant had the transcript because there was some effort made to at least begin a cross-examination, but the lawyer never submitted the transcript. So what effect do you think that has on this case as far as error goes? As far as error goes, here's what the transcript, in my opinion, reflects, Your Honor. You can't tell me that. Again, I get no joy out of saying this, but what the record reflects is that Ms. Berger did not know she had to do a hearing before the admission of the CAC interview. Okay, but how did that prejudice, I mean, I understand that, but you're not allowed to tell us beyond what's in the record what's in that recording because it's not in the record. So we're in a catch-22 here. The catch-22 is, and the solution, I think, is this. Ms. Berger was aware of what was in it. As a matter of fact, her opening statement predominantly was about how very important, and that's a direct quote, the CAC interview was to this case. Later on, at the conclusion, the judge pointed out, Judge Lewis pointed out, that in a lot of these cases, it's one person's word versus another. It bases upon the credibility of witnesses. The defendant was deprived that opportunity. In one of the arguments I made, I noticed I believe it was people beat then. One of the arguments that I believe that came out of the Fifth District here, or one of the statements made, is that a trial isn't a game. It's not win or lose. It's about truth and justice. That's what it's about. He wasn't given that opportunity, and it wasn't a trial tactic. It wasn't a decision that she made. Explain why it wasn't a trial tactic in this case. In this case, Ms. Berger advised it was going to come into the record. Ms. Ervin, the prosecutor, stated, no, it's not. She wasn't going to offer it. That is evidence. If you look at the witnesses that Ms. Ervin called, there were nine. Not one of them was from the CAC. She should have known then that this wasn't going to be offered? Is that what you're saying? She was unaware until that day it was going to be offered. Ms. Berger had, other than the defendant, one other witness. Mr. Friedman testified regarding DNA. She had no one subpoenaed to testify to it. There was not a motion hearing set prior to the trial beginning, bench trial beginning. There was not one conducted prior to the trial beginning, even the day of the trial. Again, I get no pleasure in saying this. The reason is Ms. Berger was unaware that 725 ILCS 5-115, Section 10, requires a hearing be held. Judge Lewis advised Ms. Berger that we can't agree, we can't stipulate, that we must have a hearing on this. There was not one person from the CAC subpoenaed by anyone to testify. There was a trial tactic in this case, and that was by Ms. Erwin. Ms. Erwin did not want the CAC interview presented to the trial court, so she didn't bring anyone or subpoena anyone to testify about it. Ms. Berger was- But aren't we stuck with the plain error? Are we stuck with the plain error review here? I believe so. So what is the error here on that issue? We don't have- so the plain error, we first have to show there was error, and then we have to show that either there was prejudice or something of that nature, and then- or that it was so serious and egregious that integrity is system error. In my apologies, I didn't cite it in my brief, but the Supreme Court stated in People v. Wright, 111-112-18, that counsel's decision not to raise a defense, in this case of intoxication, or present an expert witness in support because she was unaware that she could bring that defense, it appears counsel's misapprehension of the law and- was misapprehension of the law and not trial strategy. And what's the- This was Ms. Berger's misapprehension of the law. What is the cite on People v. Wright? 111-2-18. And it's not in your brief? No, it is not, Your Honor. Okay. Is that a post-conviction case, or is that a direct appeal? It is a post-conviction. Okay. Thank you. All right, you'll have a few minutes to respond to the State's arguments. Your time is up, unfortunately. We'll give you a few more minutes. Thank you. Well, if I can actually grab everything. That's all right. You can leave some off. You'll be dead. May it please the Court. Counsel. Jennifer Camden on behalf of the People. I'd like to start, if I may, with a quick note about the defendant's Issue 3. That's the issue about abuse of discretion. It is claimed that the Court abused its discretion in permitting the State to reopen its case to present evidence. That's evidence of the defendant's age. I'd note that the State argued in the after-brief that it was forfeited to be reviewed only for plain error, and that the defendant's reply brief doesn't mention that issue or seek plain error review. And so the People's response to that is that a defendant who doesn't seek plain error review has not met his burden of persuasion on the issue. Just let me write this down. Sure. So you're claiming waiver there? Correct. Okay.  Go ahead, Ms. Camden. And on the merits of that. Issue 3. And on the merits of Issue 3, if the State will rest on its brief. I'd like to address the CAC. Yes, absolutely. So the heart of the defendant's claim is that the record, particularly at the stage of the opening statement, indicates some level of misunderstanding or misapprehension on the part of defense counsel as to whether the State intended to introduce the CAC video into evidence, and that as a result of that misapprehension, defense counsel changed her trial strategy. But the defendant can't prove ineffective assistance of counsel by showing that there was a misapprehension or by showing that there was a change in trial strategy. The issue is whether the strategy that counsel did pursue was constitutionally, objectively reasonable, and whether the defendant has shown prejudice, a reasonable probability of a different result had counsel pursued that different strategy, or whether the new strategy that counsel did pursue still subjected the State's case to meaningful adversarial testing. Now, the Court observed that the — that because the video and the transcript are not in the record, defendant has a threshold inability to prove prejudice. He can't show a reasonable probability of a different result based on a failure to introduce unknown evidence, nor can he show that counsel was constitutionally unreasonable for failing to introduce unknown evidence at trial. Well, but it does seem that during trial, during the transcript of proceedings, it does seem that defense counsel appeared surprised that this tape wasn't offered in the CAC recording. And so I'm not sure how we can say it was trial strategy as opposed to misapprehension of the law. But, you know, without a — without a transcript or something upon which we can review this, I'm not sure how we can determine error. Right. Well, I do think that that's — that that's the threshold problem. But I will say that the record does indicate the strategy that was in play here, because when the Court — when the State broke — okay. The State — if this was a bench trial and the State didn't present an opening statement, then the defense opening statement mentioned this — the strategy based on the CAC video. The State broke in and said that it didn't intend to present the video and that a motion had to be heard ahead of time. The Court agreed but said that they'd cross that bridge when they came to it. And then the State presented the testimony of the witness — or, sorry, of the victim, who was 9 years old at the time of trial and 6 at the time of the offense. And before the cross-examination of that witness, the defense told the Court that it would attempt to impeach her with the transcript of the video. And the Court, again, told counsel, why don't we get there? The court — counsel then proceeded to attempt to impeach her with the transcript of the video. There was no hearing. No. There was — no. There was — there was no hearing. Then, in the State's case in chief, the State also presented testimony of both of the victim's parents. And both of those parents testified that they also interviewed their daughter and audio recorded it on their phones. I was — that was going to be my second set of questions because it was surprising to me that the defense counsel stipulated to that. Correct. And defense counsel did stipulate to that. Without requiring any foundation or without anything, she's stipulating to parental interviews where, you know, here we have a requirement in the law for reliability and CAC with — well, CAC interviews where, presumably, we have well-trained interviewers and now we have a defense counsel stipulating to phone interviews by the parents where there's high — high suggestibility. I mean, that's a pretty unusual, I would think. Well, Your Honor, I — I'm not saying it's rising to the level of ineffective assistance. I mean, I want to hear your comments on that. Right. Well, of course, I understand what you're saying, Your Honor. I would note that the defendant's argument is that counsel was ineffective for not moving to admit the CAC interview into evidence. The — I'd also note that the — that defense counsel used those — and you can see this in the closing argument. Defense counsel used those tapes to argue that the victim had essentially been coached or influenced. And that was — and that was the argument. So you can say at least that there's some evidence that that was her trial strategy, i.e., that's why she stipulates. Absolutely. Furthermore, I'd say that the difference between the strategy that defense counsel had intended to pursue, the one based on the CAC interview, and the strategy that counsel ended up pursuing based on the parents' interviews, ended up being arguably more persuasive in that her parents were not trained CAC interviewers and those statements were made closer in time to the actual event. And it was the defendant's argument that the victim's statements to her parents were vague. Let me switch horses on you a minute. There was another claim on ineffective assistance. These photographs were taken from the employer. How did those get in? I mean, is our matter a little unusual that she doesn't object to that or to the foundation requirements? Right. Well, again, the argument the defendant is making on appeal is that counsel was ineffective for not producing an unknown witness who would have given testimony from the employer. But the defense counsel at trial did stipulate that the photographs were obtained by subpoena from the defendant's employer. The subpoena — But she didn't object to a failure to properly authenticate. I think that's true. I think so as well, Your Honor. And certainly that idea is hinted at, I think, in the defendant's reply brief. But the — Well, my only concern is it seems that the trial court relied on these photographs — Yeah. — taken from the computer of some employer. I mean, they seem far removed. But the court seemed to rely on the photos as part of the evidence to support the finding of guilt. Was there any motion in Lemonade file to keep those out? I don't believe so, Your Honor. I would note that the photographs — the defendant at trial didn't contest that they were taken in his home and that they were taken — and that they depicted the victim and that they were taken on a device belonging to him. His argument was that — was that perhaps he took them accidentally or that perhaps his daughter or the victim herself took them. No, I don't understand. I'm just wondering what my emotion in Lemonade was with that. Right. But let me ask you this. Since we're on a plain error review here — Well, I mean, it — — on the plaintiff's case. Since these are ineffective assistance of counsel claims, I don't think it's — I don't think that that's plain error, is it? It's just — No, it's a different — Right. But it's still the defendant that bears the strong — the burden of showing that — of puncturing the presumption that — the strong presumption that the strategy was reasonable and showing the high level of prejudice that's required. And, again, as to the prejudice on the pictures, I'd just point out that, again, these pictures were taken of the victim in the defendant's home. The defendant testified that he rarely had visitors. He testified that the — that his daughter and the victim had access to his devices, but he didn't provide any evidence that anyone else could have taken these photographs of the victim in his home. Okay. One other — or maybe a couple questions. I didn't see in the record where the judge, when he was sentencing the defendant, asked the defendant whether he had had any trouble with his counsel. Do you think such a question is required under the law? I — A cranky type of inquiry. Right. That is, you know, are you pleased with your counsel? I didn't look at that issue, Your Honor. Let me ask you another one. Do you think that — I recognize this is on direct appeal today, but if this case would be affirmed, do you think that counsel could still renew some of these objections on a post-conviction type of hearing under a gist of a constitutional claim, constitutional denial? Yeah. It's difficult to say, of course, without looking at a specific issue raised. I think that the — But just generally, as a procedural matter, you would agree that some of these — I certainly think that the — I'm not asking you to agree or agree that clear on that. I know, Your Honor. I don't want you to do that. Okay. Yeah, I know, Your Honor. I think that the Veitch case, the Supreme Court case that's cited in the brief, in the — I think both parties' briefs, talks about the adequacy of the record and the — of a record on direct appeal and that when the record is inadequate, then the more proper route is post-conviction, yes. And you are getting at the root of my question. Okay. One other question I want to ask you because it was brought up by opposing counsel. He raised a case that was not in the brief, evidently, People v. Wright, and I want to ask the State whether you want the opportunity to respond to that. I'll certainly take a look at it. Yes, I would like — I will give you 14 days to file a written response. If you choose not to, will you let us know? Did you get the citation of the case? Yes, Your Honor, I did. Okay. So we'll issue an order that gives the State the opportunity in 14 days to respond to People v. Wright, which is 111 LF 2nd 18. Did I get that right? I think that was it. Okay. And as I said, Ms. Cambridge, sometimes you respond, sometimes you don't. If you decide not to, you will let the clerk know. Okay. So you're not waiting. Thank you. Okay, thank you. Happy holidays. Would you like some response? Just incredible brief, Your Honor. I don't know how many of you guys — No, it's your time. You take as much as you want. Yeah. Respectfully, Your Honor, again, I disagree with counsel, obviously. The back-and-forth at the time this trial strategy was supposed to be going on was, Ms. Irwin, I object, Your Honor. I don't plan to play the interview. There's been no motion to play it. It has. There has been a motion that is heard ahead of time. Ms. Berger, I don't see why I can't offer to have it played. The court, there will need to be a hearing prior to it being introduced. Ms. Irwin, it's statutory. Ms. Berger, it's a bench trial. I thought, Judge, it just assumed you were going to take all those liability factors into account. That, Your Honor, is the mistake of the law. It's not a trial strategy. And, again, I get no joy out of saying that, but that's what went on at the time. If she had to formulate a different trial strategy later because she did not properly prepare to admit the CAC or to have the CAC brought into evidence, obviously she had to do that. But that's what happened at the time. It wasn't an oversight. It wasn't a trial strategy. It was an error in not being aware under the statute that you had to have a motion ahead of time. That was the error. With regards, and I just wanted to bring this up, with regards to the decision of the judge on the issue number three that I raised, Mr. King obviously was sitting in court that day and observed the court assist Ms. Irwin in raising an issue that she had neglected to bring up. And would she want to reopen her case to do that? Mr. King and his family was vocal with me about that same opportunity was not afforded him back when the CAC was being offered and introduced and was denied. And basically Ms. Berger wasn't afforded the same luxury that it appeared to him that Ms. Irwin obtained. Not necessarily the same luxury. Such as the court saying, let's have a hearing. Right. But in this case, remember, the court couldn't, in my opinion, have a hearing at that time. There was no one there who could testify to the CAC. No one had been subpoenaed. So the court didn't have a choice but to proceed on with the trial, which is what in fact happened. Well, as I asked Ms. Camden, there's a question as to whether or not the burdens of persuasion are different in the Proof of Conviction Act versus the direct appeal, which we're on today. But I understand your arguments. Do you have any questions? I don't. No questions. Do you have anything else you'd like to say, sir? No, Your Honor. All right. Thank you so much for coming out to the end of the day. This matter will be taken under advisement. That concludes the docket for today and I guess for the month. So we'll be in adjournment until January of 2020.